**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

ANTHONY LOGAN,

|                                          |                             |
|------------------------------------------|-----------------------------|
|                          Plaintiff,      | 1:18-cv-01179 (BKS/CFH)     |

v.

THE CITY OF SCHENECTADY, CHIEF ERIC S.
CLIFFORD, ASSISTANT CHIEF PATRICK LEGUIRE,
ASSISTANT CHIEF JACK FALVO, LT. ERIK
GANDROW, SGT. JEFFREY McCUTCHEON, SGT.
THOMAS HARRIGAN, DET. SGT. PETER FORTH,

                              Defendants.

---

**Appearances:**

*For Plaintiff:*
Leo Glickman
Stoll, Glickman & Bellina, LLP
300 Cadman Plaza West, 12th Floor
Brooklyn, NY 11201

*For Defendants:*
Gregg T. Johnson
Corey A. Ruggiero
Johnson & Laws, LLC
648 Plank Road, Suite 204
Clifton Park, NY 12065

**Hon. Brenda K. Sannes, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

This action arises from a June 5, 2017 incident during which Plaintiff was shot twice by officers of the Schenectady Police Department ("SPD") at his home in Schenectady, New York. (Dkt. No. 2, ¶¶ 9–49).[1] In the Complaint, Plaintiff alleges that Defendant SPD Officers Clifford, Leguire, Falvo, Gandrow, McCutcheon, Harrigan, and Forth (the "Individual Defendants") were deliberately indifferent to his serious medical need in violation of the Fourth, Eighth, and Fourteenth Amendment under 42 U.S.C. § 1983, (*id.* ¶¶ 57–62), and the New York State Constitution, (*id.* ¶¶ 68–70). Plaintiff further asserts that the City of Schenectady is liable for the wrongs of the Individual Defendants under a theory of "respondeat superior," (*id.* ¶¶ 68–72), which Plaintiff now argues is a *Monell*[2] claim, (Dkt. No. 14, at 14–15). Plaintiff also brings state law claims for negligence, (*id.* ¶¶ 51–56), and intentional infliction of emotional distress, (*id.* ¶¶ 63–67). Defendants move for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) as to all of Plaintiff's claims, and for summary judgment under Federal Rule of Civil Procedure 56(a) on Plaintiff's state law tort claims. (Dkt. No. 10-6, at 33). Plaintiff opposes the motion. (Dkt. No. 14). For the reasons that follow, Defendants' motion is granted in part and denied in part.

---

[1] On October 1, 2018, Defendants removed this action from the Supreme Court of the State of New York, Schenectady County.

[2] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

## II.    BACKGROUND

### A.    Factual Background[3]

At approximately 10:00 am on June 5, 2017, SPD police officers arrived at Plaintiff's home in Schenectady, New York. (Dkt. No. 2, ¶ 10–11). At that time, "Plaintiff was on the second floor of the building, and went onto an external porch to speak with the officers who were outside at ground level." (*Id.* ¶ 11). The officers, under the command of Defendant McCutcheon, "spoke to [P]laintiff in this position for approximately half an hour." (*Id.* ¶¶ 12–13). At some point "[d]uring this conversation[,] [P]laintiff's wife exited the home[,] . . . went with the police," and "informed [them] that [P]laintiff was alone in the home following her exit." (*Id.* ¶¶ 14–15). "At or about 10:37 am SPD officers fired their guns at [P]laintiff," who was unarmed, and "Plaintiff was hit by at least two bullets fired by SPD officers." (*Id.* ¶¶ 16–18). Plaintiff was "knocked to the ground" by "the SPD officer's [sic] gunfire," "began bleeding profusely from the gunshot wounds," and "was in extreme pain and unable to move from the porch as a result of his injuries." (*Id.* ¶ 19–20). Immediately "after the shots were fired," Defendant McCutcheon "reported 'shots fired' over his SPD radio and requested emergency medical personnel and a police tactical team be dispatched to the area"; shortly thereafter, Defendants "Clifford, Leguire, Falvo, Gandrow, Harrigan, and Forth . . . arrived at the scene, either responding to the ongoing police activity or as part of the tactical team." (*Id.* ¶¶ 21–22).

Upon arrival to the scene, Defendants positioned themselves "around [P]laintiff's home [and] could observe Plaintiff on the porch." (*Id.* ¶ 23). Defendants could see that Plaintiff "had been hit, was bleeding, and appeared unable to move," and they "reported their observations over the SPD radio." (*Id.* ¶ 24). While he was bleeding on the floor of the porch, Defendants

---

[3] **The facts have been drawn from the Complaint, (Dkt. No. 2), and are assumed to be true for the purposes of the portions of Defendants' motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c).** *Patel v. Contemporary Classics of Beverly Hills,* **259 F.3d 123, 126 (2d Cir. 2001).**

"directed various commands to [P]laintiff, including directing him to stand up, raise his hands above his head, and/or come down from the porch." (*Id.* ¶ 27). "[A]s a result of his injuries," however, Plaintiff was unable to comply." (*Id.*). "Emergency medical technicians arrived on the scene by approximately 10:50 am." (*Id.* ¶ 28). Notwithstanding the fact that Defendants "were aware that [P]laintiff needed immediate medical assistance as a result of the gunshot wounds he suffered," (*id.* ¶ 26), Defendants "ordered the medical personnel to wait a short distance from the area and did not allow them to access [P]laintiff or his home," (*id.* ¶ 28).

Although an "SPD tactical team was on the scene" by approximately 11:05 a.m., (*id.* ¶ 30), "SPD officers repeatedly told [P]laintiff that he should not move and that they would be coming to assist him shortly," (*id.* ¶ 33). During that time, Defendants were aware that Plaintiff was "in agonizing pain as a result of the gunshot wounds and blood loss." (*Id.* ¶ 36). "Several of [P]laintiff's family, friends and/or neighbors," who had become "aware that [Plaintiff] had been shot and was on the porch awaiting" medical treatment, "attempted to go to his assistance." (*Id.* ¶¶ 37–38). Defendants, however, "physically barr[ed] them from accessing [P]laintiff's home." (*Id.* ¶ 39). "[D]espite knowing that [P]laintiff was suffering from multiple gunshot wounds, . . . in agonizing pain, [and] unable to move himself to get help," Defendants "left [P]laintiff bleeding on the porch for over two hours without any medical treatment." (*Id.* ¶ 42). As he waited, "Plaintiff believed he was going to die." (*Id.* ¶ 46). As a result of the "extended delay in access to medical treatment," Defendants caused Plaintiff to "suffer agonizing pain" and "worsened his medical condition as he suffered significant blood loss." (*Id.* ¶ 45). At approximately 12:54 p.m., Defendants "finally allowed SPD officers to enter . . . [P]laintiff's home," and "paramedics were finally allowed to enter and treat him" shortly thereafter. (*Id.*

¶¶ 40–41). "Plaintiff was rushed to the hospital where he remained in intensive care for days." (*Id.* ¶ 46).

## B.    Procedural Background[4]

On August 25, 2017, Plaintiff filed a verified notice of claim with Defendant City of Schenectady, seeking damages for "assault, battery, negligence, deliberate indifference, deprivation of federal and state constitutional and civil rights, violations of 42 U.S.C. Sections 1983, [and] the Fourth and Fourteenth Amendments to the United States Constitution," arising from the June 5, 2017 incident. (Dkt. No. 10-7, ¶ 3). Plaintiff's counsel had not yet been retained. (Dkt. No. 14-1, at 1). "[P]ursuant to New York General Municipal Law 50-h," Defendants "served upon Plaintiff's counsel a Demand for Examination on or about October 24, 2017." (*Id.* ¶ 4). At that time, however, Plaintiff "was facing felony charges stemming from" the June 5, 2017 incident. (Dkt. No. 14-1, ¶ 4). As a result, on November 15, 2017, Plaintiff's counsel sent a letter to counsel for Defendants requesting an adjournment of the § 50-h examination, and informing him that "[i]f a[n] . . . examination is held while those charges are pending, we will advise him to exercise his 5th Amendment right to refuse to answer questions related to the date of [the] incident." (*Id.* ¶ 6). Defendants, however, "refused [Plaintiff's] request to reschedule the examination," (*Id.* ¶ 7). On November 28, 2017, Defendants' counsel responded that they planned "to go forward with [Plaintiff's] 50-h examination as noticed." (Dkt. No. 14-5).

Plaintiff's § 50-h examination was ultimately held on January 4, 2018. (Dkt. No. 10-7, ¶ 5). At the examination, Plaintiff was accompanied by his counsel in the instant litigation, as well as Brendan Keller of the Schenectady County Public Defender's Office. (Dkt. No. 14-1,

---

[4] **Facts relevant to those portions of Defendants' motion considered under Federal Rule of Civil Procedure 56(a) are taken from Defendants' statement of material facts, (Dkt. No. 10-7), the exhibits and affidavits attached to Defendants' motion, (Dkt. Nos. 10-1 to10-5), and the exhibits and affidavits Plaintiff has filed in response, (Dkt. Nos. 14-1 to 14-8).**

¶ 12). During the examination, Mr. Keller advised Plaintiff "to exercise his Constitutional right not to answer questions which related to the criminal charges he was facing." (*Id.* ¶ 13). As a result, Plaintiff "did not answer . . . any questions relating to his behavior or interactions with police officers on the morning of June 5, 2017" and several other topics related to various criminal charges pending against him at the time. (Dkt. No. 10-7, ¶¶ 7–10). Defendants' counsel "never indicated—on the record or off—a desire to revisit those questions after the conclusion of the criminal case against" Plaintiff. (Dkt. No. 14-1, ¶ 13). Notwithstanding Plaintiff's counsel's "efforts prior to January 4, 2018 . . . to reschedule the examination for a date on which [Plaintiff] would be free to answer [D]efendants' questions about the claim," Defendants "never made known a desire to resume the § 50-h examination . . . or any dissatisfaction with its completeness." (Dkt. No. 14-1, ¶¶ 19–20).

On March 1, 2018, following a criminal trial on the charges relating to the June 5, 2017 incident, Plaintiff was convicted of felony possession of a weapon, reckless endangerment, and menacing, among other crimes. (Dkt. No. 10-7, ¶ 12; Dkt. No. 14-1, ¶ 16). "On or about March 8, 2018," Defendants' counsel "sent a letter stating he was following up on [Plaintiff's] § 50-h examination" by requesting authorizations for medical records; the letter, however, "did not mention in any way a desire to resume the § 50-h examination, even though [Plaintiff's] criminal trial had . . . concluded." (Dkt. No. 14-1, ¶ 17). Plaintiff argues that "Defendants never indicated to [P]laintiff or his counsel that they had any desire to reschedule/resume the examination, despite their earlier denials of [P]laintiff's request to do so" until after his criminal charges had been resolved. (*Id.* ¶ 21). Defendants, on the other hand, contend that it is "Plaintiff's counsel [who] made no attempt to reschedule Plaintiff's 50-h examination prior to commencing the instant action." (Dkt. No. 10-7, ¶ 13).

## III.   DISCUSSION

### A.   Motion to Dismiss under Rule 12(c)

#### 1.   Standard of Review

The standard of review for a motion under Rule 12(c) is the same as a motion under Rule 12(b)(6). *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010). To survive a motion to dismiss, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Although a complaint need not contain detailed factual allegations, it may not rest on mere labels, conclusions, or a formulaic recitation of the elements of the cause of action, and the factual allegations 'must be enough to raise a right to relief above the speculative level.'" *Lawtone-Bowles v. City of New York*, No. 16-cv-4240, 2017 WL 4250513, at *2, 2017 U.S. Dist. LEXIS 155140, at *5 (S.D.N.Y. Sept. 22, 2017) (quoting *Twombly*, 550 U.S. at 555). A court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Communs, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). When deciding a motion for judgment on the pleadings, a court's review is ordinarily limited to "the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).

2.      **Section 1983 Claims**

a.      **Deliberate Indifference to Serious Medical Needs[5]**

A pretrial detainee's or arrestee's claim for "deliberate indifference to [a] serious threat to health or safety," such as exposure to unconstitutional conditions of confinement or the failure to treat a serious medical need, *Darnell v. Pineiro*, 849 F.3d 17, 33 n.9 (2d Cir. 2017), is "governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishment Clause of the Eighth Amendment."[6] *Id.* at 29. The distinction arises because arrestees "have not been convicted of a crime and thus may not be punished in any manner—neither cruelly and unusually nor otherwise." *Iqbal v. Hasty*, 490 F.3d 143, 168 (2d Cir. 2007) (internal quotation marks omitted). Regardless of the constitutional standard applied, however, an arrestee's rights are "at least as great as the Eighth Amendment protections available to a convicted prisoner." *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244–45 (1983). Specifically, the Supreme Court has held that the Due Process Clause of the Fourteenth Amendment requires a "government or governmental agency to provide medical care to persons . . . who have been injured while being apprehended by the police." *Id.* at 244.

Following the Second Circuit's decision in *Darnell v. Pineiro,* 849 F.3d 17 (2d Cir. 2017), district courts have held that a pretrial detainee alleging deliberate indifference to serious

---

[5] **Because dismissal of Plaintiff's federal claims may warrant remand of Plaintiff's remaining claims to state court, the Court addresses Plaintiff's federal claims first.** *Carter v. City of Albany***, No. 06-cv-461, 2007 WL 913923, at \*3, 2007 U.S. Dist. LEXIS 20832, at \*8 (N.D.N.Y. Mar. 23, 2007) ("Since plaintiff brings claims under both federal and state law, and federal jurisdiction is dependent on the existence of viable federal claims, it is appropriate to analyze plaintiff's federal claims first.").**

[6] As Defendants argue in their motion, "the Eighth Amendment does not apply prior to conviction and sentence." (Dkt. No. 10-6, at 27 (quoting *Bowman v. Campbell*, 850 F. Supp. 144, 147 (N.D.N.Y. 1994)). The Complaint contains no facts that suggest the events in this case occurred post-conviction. Thus, the Eighth Amendment is inapplicable. Furthermore, by failing to refute Defendant's argument, Plaintiff has abandoned his Eighth Amendment claim. *See Mainella v. Golub Corp.*, No. 15-cv-1082, 2018 WL 1587049, at \*7, 2018 U.S. Dist. LEXIS 51119, at \*20 (N.D.N.Y. Mar. 28, 2018) ("Where a plaintiff fails to respond to a defendant's arguments regarding some of her claims but responds to its arguments regarding other claims, the courts generally assume that the plaintiff has abandoned those claims."). Plaintiff's claim under the New York State Constitution's prohibition on cruel and unusual punishment is dismissed for the same reasons. *See Powlowski v. Wullich*, 102 A.D.2d 575, 583–84 (App. Div. 4th Dep't 1984) (stating that New York's prohibition against cruel and unusual punishment of convicted prisoners does not apply to pre-trial detainees).

medical needs under the Fourteenth Amendment must establish: (1) that the alleged deprivation

of medical care is "sufficiently serious"; and (2) that the defendant either: "acted intentionally to

impose the alleged condition" or "recklessly failed to act with reasonable care to mitigate the

risk that the condition posed to the pretrial detainee even though the defendant-official knew, *or*

*should have known*, that the condition posed an excessive risk to health or safety." *Id.* at 30, 35

(emphasis added); *see Walker v. Wright*, No. 17-cv-425, 2018 WL 2225009, at *5, 2018 U.S.

Dist. LEXIS 81408, at *12 (D. Conn. May 15, 2018) (noting that, while *Darnell*'s holding was

applied to a conditions of confinement claim, "[d]istrict courts in this Circuit have . . . applied

*Darnell*'s objective '*mens rea*' prong to claims of deliberate indifference to serious medical

needs under the Fourteenth Amendment"). "In other words, the 'subjective prong' (or '*mens rea*

prong') of a deliberate indifference claim [under the Fourteenth Amendment] is defined

objectively." *Darnell*, 849 F.3d at 35.

The Court notes that neither party has accurately recited the relevant standard for a

Fourteenth Amendment claim for deliberate indifference to an arrestee's serious medical need.

(*See* Dkt. 10-6, 27–30; Dkt. No. 14, at 11–14). Nevertheless, as Plaintiff points out, Defendants

do not appear to challenge whether Plaintiff has alleged facts sufficient to establish a Fourteenth

Amendment violation. (Dkt. No. 14, at 12).[7] Rather, Defendants move to dismiss Plaintiff's

Fourteenth Amendment claims against the Individual Defendants solely on the basis that

Plaintiff has failed to allege that they were "personally involved in any alleged constitutional

violation (here, deliberate indifference)." (Dkt. No. 10-6, at 27). Plaintiff responds that, because

the Complaint alleges that all of the Individual Defendants "were personally present at the scene

where they . . . watched as [Plaintiff] nearly bled to death for over two hours," he has sufficiently

---

[7] Neither party has addressed the basis for, or viability of, Plaintiff's alleged Fourth Amendment violation. The Court
has therefore included it as a claim that survives Defendants' motion.

pled their personal involvement to withstand a motion for judgment on the pleadings. (Dkt. No. 14, at 12).

### b.     Individual Defendants' Personal Involvement

"[T]he personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016) (internal quotation marks omitted). "Because vicarious liability is inapplicable to . . . § 1983 suits," a plaintiff must plausibly allege that "each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). Ultimately, a plaintiff must "allege a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). An individual's "[p]ersonal involvement can be shown by: 'evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference . . . by failing to act on information indicating that unconstitutional acts were occurring." *Back v. Hastings On Hudson Union Free School Dist.*, 365 F.3d 107, 127 (2d Cir. 2004) (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)). To adequately allege "[p]ersonal involvement . . . by 'direct participation,'" a plaintiff must demonstrate "'intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal.'" *Victory*, 814 F.3d at 67 (quoting *Provost*, 262 F.3d at 155).[8]

---

[8] Following the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), this Court has ruled that the *Colon* factors apply where a plaintiff's "claims do not require a showing of discriminatory intent and are based on the unreasonable conduct standard of the Fourteenth Amendment." *Montanez v. City of Syracuse*, No. 16-cv-00550, 2019 WL 315058, at *18, 2019 U.S. Dist. LEXIS 10351, at *51 (N.D.N.Y. Jan. 23, 2019). For the purposes of this case, however, it is not necessary to explore this issue because the Individual Defendants were directly involved in the alleged constitutional deprivation.

Drawing all reasonable inferences in Plaintiff's favor, as the Court must at this stage of the proceedings, the Complaint alleges that each of the Individual Defendants: (i) physically arrived at the scene by 11:05 am at the latest, (*id.* ¶¶ 21–22, 30); (ii) positioned themselves around Plaintiff's porch close enough to "observe[] that [he] had been hit, was bleeding, and appeared unable to move," (*id.* ¶ 24); (iii) "ordered medical personnel to wait a short distance from the area and did not allow them" assist Plaintiff; (iv) refused to allow paramedics or anyone else assist Plaintiff, (*id.* ¶¶ 32, 37–39, 43); (v) "left [P]laintiff bleeding on the porch for over two hours without any medical treatment," despite their knowledge based on their direct observations that Plaintiff was "in agonizing pain" and "unable to move," (*id.* ¶ 42); (vi) "personally participated" in the decision to create the "extended delay in [Plaintiff's] access to medical treatment," (*id.* ¶¶ 45, 47); and (vii) "worsened [Plaintiff's] medical condition" by causing him to "suffer[] significant blood loss," after which he "remained in intensive care for days," (*id.* ¶¶ 45–46).

These allegations, which demonstrate the Individual Defendants' physical presence at the scene, personal knowledge of Plaintiff's condition, and failure to permit him to receive medical attention notwithstanding the opportunity to do so, are sufficient to plausibly allege their direct participation. *See Case v. City of New York*, 233 F. Supp. 3d 372, 397 (S.D.N.Y. 2017) (holding that personal presence, issuance of orders, and "maintaining control of traffic in the vicinity" sufficient to allege direct participation); *cf. DiGennaro v. Town of Gates Police Dep't*, No. 07-cv-6426, 2013 WL 3097066, at *16 n.29, 2013 U.S. Dist. LEXIS 85571, at *53 n.29 (W.D.N.Y. June 18, 2013) (declining to find personal involvement of any officer not in a "position to render" or "affect [the plaintiff's] medical care during the critical time between when he collapsed and when the . . . and ambulance arrived"). Accordingly, Plaintiff has sufficiently

alleged the Individual Defendants' direct participation—and thus their personal involvement—in the constitutional violations alleged. *See Majid v. Scully*, No. 83-cv-7409, 1984 WL 804, at *1, 1984 U.S. Dist. LEXIS 23986, at *3 (S.D.N.Y. Aug. 30, 1984) (rejecting "defendant's contention that plaintiff . . . relies on a *respondent superior* theory" because of defendant's "alleged presence and activities at the site of the incident would permit an inference of acquiescence and personal involvement").

Defendants primarily take issue with Plaintiff's method of alleging facts against the Individual Defendants "as a group without identifying . . . conduct specific to each" officer. (Dkt. No. 10-6, at 29).[9] As Defendants correctly note, "complaints that rely on group pleading and fail to differentiate as to which defendant was involved in the alleged unlawful conduct are insufficient to state a claim." *Leneau v. Ponte*, No. 16-cv-776, 2018 WL 566456, at *15, 2018 U.S. Dist. LEXIS 12272, at *40 (S.D.N.Y. Jan. 25, 2018) (internal quotation marks omitted). That is not the case here, however, as Plaintiff has alleged that the Individual Defendants were *all* involved in the *same* unlawful conduct: refusing to allow anyone to enter Plaintiff's home to provide medical attention for his gunshot wounds for approximately two hours. In other words, Defendants' argument fails because *all* of the conduct alleged is "specific to each" of the Individual Defendants. Furthermore, Defendants do not seek dismissal on the basis that the Individual Defendants' conduct, as alleged in the Complaint, fails to state a constitutional violation.

---

[9] Defendants generally confuse Rule 8's requirement that a complaint give each defendant "fair notice of what the plaintiff's claim is and the ground upon which it rests," *Atuahene v. City of Hartford*, 10 Fed. App'x 33, 34 (2d Cir. 2001), with a plaintiff's obligation to plead a defendant's personal involvement in order to state a claim under § 1983. In any event, the Court concludes that Plaintiff has satisfied Rule 8 for the same reasons he has adequately pled the Individual Defendants' personal involvement.

### c.     Monell Claim

Defendants move to dismiss Plaintiff's *Monell* claim against the City of Schenectady on the basis that the Complaint "is completely devoid of any factual allegations that Plaintiff's constitutional rights were violated pursuant to an official policy, practice, or custom of the City." (Dkt. No. 10-6, at 30). Plaintiff responds that he has "pled a *Monell* claim by showing a policy or practice of the City which at least caused part of his injuries," and the City of Schenectady "is liable for failure to train or supervise its employees." (Dkt. No. 14, at 15).

"For the purpose of Section 1983, a municipality is not vicariously liable for the acts of its employees," *Green v. City of New York*, 465 F.3d 65, 80 (2d Cir. 2006) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)), but a municipality is liable when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury," *Monell*, 436 U.S. at 694. "To hold a municipality liable in such an action, 'a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right.'" *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) (quoting *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983)).

A municipal policy or custom may be established where the facts show: (1) a formal policy, officially promulgated by the municipality, *Monell*, 436 U.S. at 690; (2) action taken by the official responsible for establishing policy with respect to a particular issue, *Pembaur v. Cincinnati*, 475 U.S. 469, 483–84 (1986); (3) unlawful practices by subordinate officials so permanent and widespread as to practically have the force of law, *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127–30 (1985); or (4) a failure to train or supervise that amounts to "deliberate indifference" to the rights of those with whom the municipality's employees interact, *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). "[A] municipal policy may be inferred from the

informal acts or omissions of supervisory municipal officials." *Zahra*, 48 F.3d at 685.

Furthermore, "municipal inaction such as the persistent failure to discipline subordinates who

violate civil rights could give rise to an inference of an unlawful municipal policy of ratification

of unconstitutional conduct." *Batista*, 702 F.2d at 397; *see also Turpin v. Mailet*, 619 F.2d 196,

200 (2d Cir. 1980) (holding that "where senior personnel have knowledge of a pattern of

constitutionally offensive acts by their subordinates but fail to take remedial steps, the

municipality may be held liable for a subsequent violation if the superior's inaction amounts to

deliberate indifference or to tacit authorization of the offensive acts").

In this case, Plaintiff argues that he has adequately pled a *Monell* claim under a theory

that the City of Schenectady has failed to train or supervise its employees. (Dkt. No. 14, at 15–16

(citing *Walker v. City of New York*, 974 F.2d 293, 297–98 (2d Cir. 1992)). A "municipality can

be liable for failing to train its employees where it acts with deliberate indifference in

disregarding the risk that its employees will unconstitutionally apply its policies without more

training." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 129 (2d Cir.2004) (citing *City of

Canton v. Harris*, 489 U.S. 378, 387–90 (1989)). In *City of Canton*, "the Supreme Court

established the 'deliberate indifference' standard in the context of a claim for failure to train, but

'the stringent causation and culpability requirements set out in that case have been applied to a

broad range of supervisory liability claims,' including claims for failure to supervise." *Green v.

City of Mount Vernon*, 96 F. Supp. 3d 263, 306 (S.D.N.Y. 2015) (quoting *Reynolds v. Giuliani*,

506 F.3d 183, 192 (2d Cir. 2007)). Thus, to establish municipal liability based on a failure to

train or supervise, a plaintiff must show: (1) that "defendants knew to a moral certainty that the

City would confront a given situation"; (2) that "the situation presented the City with a difficult

choice or there was a history of its mishandling the situation"; (3) and that "the wrong choice by

the City would frequently cause the deprivation of plaintiffs' rights." *Reynolds*, 506 F.3d at 192

(citing *Walker*, 974 F.2d at 297–98).

The only relevant allegations in the Complaint regarding the municipality's failure to

train or supervise assert that the City of Schenectady, "acting through the Schenectady Police

Department . . . , was responsible for the policy, . . . supervision, . . . and conduct of all SPD

matters and was responsible for the . . . training, . . . supervision, . . . and conduct of all SPD

personnel." (Dkt. No. 2, ¶ 5). These allegations, however, indicate only that the City was

*responsible* for training and supervising its employees—nowhere has Plaintiff actually alleged

that the City failed to carry out those responsibilities. In any event, even if Plaintiff had done so,

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff fails to allege

facts from which it could be plausibly inferred that the officers' training was deficient or that the

City did not supervise officers to ensure they adequately address the medical needs of

individuals against whom they use force. *See Santos v. New York City*, 847 F. Supp. 2d 573, 576

("To establish municipal liability under § 1983, a plaintiff must do more than simply state that a

municipal policy or custom exists. Rather, a plaintiff must allege facts tending to support, at least

circumstantially, an inference that such a municipal policy or custom exists." (citation omitted));

*Rifenburg v. Hughes*, No. 15-cv-978, 2016 WL 866344, at *3, 2016 U.S. Dist. LEXIS 26887, at

*9 (N.D.N.Y. Mar. 3, 2016) ("Plaintiff's complaint is replete with boilerplate statements

declaring that such policies and practices exist and were the cause of his alleged injuries, yet

devoid of any specific facts that would support such an inference.").[10]

---

[10] The only cause of action stated in the Complaint that is even arguably related to a theory of liability under *Monell* is titled "respondeat superior." (Dkt. No. 2, ¶¶ 71–74). It is well-established, however, that a municipality may not be held liable under § 1983 on the basis of *respondeat superior*. *Monell*, 436 U.S. at 694–95. Municipalities are responsible only for "their own illegal acts," *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986), and are not vicariously liable for civil rights violations perpetrated by their employees. *See Monell*, 436 U.S. at 691.

Accordingly, Plaintiff has not pled facts sufficient to state a *Monell* claim against the City of Schenectady.

### 3. State Law Claims

#### a. Intentional Infliction of Emotional Distress

Defendants argue that Plaintiff's state law claim for intentional infliction of emotional distress must be dismissed because Plaintiff has "failed to proffer any factual support for his claim . . . or to otherwise allege any conduct on the part of Defendants constituting 'extreme or outrageous conduct.'" (Dkt. No. 10-6, at 12).

"The New York Court of Appeals 'has enumerated four elements of a cause of action for intentional infliction of emotional distress: '(i) extreme and outrageous conduct;(ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress.'" *Rissetto v. Cty. of Clinton*, No. 15-cv-0720, 2016 WL 4530473, at *39, 2016 U.S. Dist. LEXIS 115832, at *149–50 (N.D.N.Y. Aug. 29, 2016) (quoting *Chanko v. Am. Broadcasting Co. Inc.*, 27 N.Y.3d 46, 56 (2016)). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Chanko*, 27 N.Y.3d at 56 (quoting *Howell v. New York Post Co.*, 81 N.Y.2d 115, 121 (1993)).

Here, Plaintiff alleges that the Individual Defendants, *inter alia*, "left [him] bleeding on the porch for over two hours without any medical treatment, despite knowing that [P]laintiff was suffering from multiple gunshot wounds, was bleeding profusely, and was in agonizing pain." (Dkt. No. 2, ¶ 42). Plaintiff further alleges that "believed he was going to die" as a result of the delay in medical treatment, which caused him to suffer emotional trauma and mental anguish. (*Id.* ¶¶ 45, 50). At this stage of the litigation, and considering the allegations in the Complaint in

the light most favorable to the Plaintiff, the Court concludes that Plaintiff has sufficiently alleged extreme and outrageous conduct to state a plausible claim for intentional infliction of emotional distress. *See Dzwonczyk v. Syracuse City Police Dept.*, 710 F. Supp.2d 248, 274 (N.D.N.Y. 2008) (concluding that "unlawful strip search . . . may be considered extreme and outrageous conduct" sufficient to state a claim for IIED); *Perri v. Bloomberg*, No. 06-cv-403, 2007 WL 2891332, at *9 (E.D.N.Y. Sept. 7, 2007)[11] (allegation that mentally-ill plaintiff was beaten while suffering from hyperventilation sufficient to state a claim for IIED), *report-recommendation adopted by* 2007 WL 2891332, 2007 U.S. Dist. LEXIS 72791 (E.D.N.Y. Sept. 28, 2007). Although Plaintiff may proceed with his claim for intentional infliction against the Individual Defendants, "Plaintiff's IIED claim against the [municipal Defendants] must fail, as it is well-settled that public policy bars claims sounding in intentional infliction of emotional distress against a government entity." *Dzwonczyk*, 710 F. Supp. 2d at 273 n.6. Accordingly, Plaintiff's claim for intentional infliction of emotional distress against Defendant City of Schenectady is dismissed.

---

[11] Lexis citation unavailable.

### b.  New York State Constitutional Claims

Defendants move to dismiss Plaintiff's state constitutional claims because Plaintiff has alternative remedies available under 42 U.S.C. § 1983. Plaintiff has not responded to that argument. "Courts in the Second Circuit generally agree that New York State Constitution creates no individual liability where § 1983 provides a remedy." *Hollins v. City of New York*, No. 10-cv-1650, 2014 WL 836950, at *14, 2014 U.S. Dist. LEXIS 183076, at *36 (S.D.N.Y. Mar. 3, 2014). Because Plaintiff has pled a viable Fourteenth Amendment claim under § 1983 against the Individual Defendants, Plaintiff's parallel state law claim is dismissed because there is no private right of action under the New York State Constitution where, as here, remedies are available under § 1983. *See Bath Petroleum Storage, Inc. v. Sovas*, 136 F. Supp. 2d 52, 58 (N.D.N.Y. 2001) (finding no "private right of action . . . under the due process clause of New York's Constitution" where viable due process claim stated under § 1983).

With regard to Plaintiff's claim against the municipal Defendants, however, § 1983 "does not provide an adequate alternative remedy for Plaintiff's state-constitutional claims, to the extent they are asserted against the City under a theory of respondeat superior." *Alwan v. City of New York*, 311 F. Supp. 3d 570, 587 (E.D.N.Y. 2018). "Because § 1983 does not authorize respondeat-superior liability, it cannot provide an adequate alternative remedy for Plaintiff's New York State constitutional claims, to the extent they are asserted against the City." *Id.* (citing *Monell*, 436 U.S. at 691–95). According, the Court declines to dismiss Plaintiff's New York State constitutional claims against the city on this basis.[12]

---

[12] As indicated above, the Eighth Amendment and New York State Constitution's prohibition on cruel and unusual punishment are inapplicable to the facts alleged in the Complaint, *see supra* note 6, and neither party has addressed the viability of Plaintiff's Fourth Amendment claim, *see supra* note 7. In any event, as Defendants argue, Plaintiff's opposition fails to address the asserted bases of dismissal for all of Plaintiff's claims under the New York State Constitution. Accordingly, dismissal is warranted by virtue of Plaintiff's abandonment of his state constitutional claims. *See Mainella*, 2018 WL 1587049, at *7, 2018 U.S. Dist. LEXIS 51119, at *20.

### B.      Motion for Summary Judgment

#### 1.      Standard of Review

Under Federal Rule of Civil Procedure 56(a), summary judgment may be granted only if all the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*). The movant may meet this burden by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *see also Selevan v. N.Y. Thruway Auth.*, 711 F.3d 253, 256 (2d Cir. 2013) (summary judgment appropriate where the nonmoving party fails to "'come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on' an essential element of a claim" (quoting *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 509 (2d Cir. 2010))).

If the moving party meets this burden, the nonmoving party must "set out specific facts showing a genuine issue for trial." *Anderson*, 477 U.S. at 248, 250; *see also Celotex*, 477 U.S. at 323–24; *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003). Still, the

nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir.1986) (quoting *Quarles v. Gen. Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985)). Furthermore, "[m]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995)).

Defendants argue that they are entitled to summary judgment on Plaintiff's state law claims because: (i) Plaintiff's notice of claim fails to identify any of the individually named police officers, (Dkt. No. 10-6, at 22–23); (ii) Plaintiff's notice of claim is insufficient to support his claim for intentional infliction of emotional distress as asserted in the instant litigation, (*id.* at 24–25); and (iii) Plaintiff "fail[ed] to comply with General Municipal Law § 50-h" by invoking his Fifth Amendment right against self-incrimination without later scheduling an additional hearing, (*id.* at 17). Plaintiff responds that: (i) the General Municipal Law does not require that a plaintiff's notice of claim "specifically name the individual defendants," (Dkt. No. 14, at 21–22); (ii) while his notice of claim "did not specifically use the words 'intentional infliction of emotional distress'" Plaintiff "clearly described the facts and circumstances underlying the claim," (*id.* at 25); and (iii) it was Defendants' burden to reschedule the § 50-h examination rather than his own, (*id.* at 17). Defendants' arguments are considered in turn below.

### 2. **Individually Named Defendants in Notice of Claim**

Under section 50-e of New York's General Municipal Law, "[a]s a condition precedent to bringing a state law tort claim against a municipality[,] a plaintiff must file a Notice of Claim within ninety days after her claim accrues." *Frantz v. City of Oswego*, No. 15-cv-1193, 2017 WL 4737258, at *4, 2017 U.S. Dist. LEXIS 173413, at *10 (N.D.N.Y. Oct. 19, 2017) (quoting *Przybyla v. Cty. of Suffolk*, No. 09-cv-5129, 2017 WL 1274051, at *2, 2017 U.S. Dist. LEXIS 30842, at *3–4 (E.D.N.Y. Mar. 3, 2017)). "To pass muster, the notice must include enough information to enable the municipality to investigate the claim adequately." *Nieblas–Love v. N.Y. City Hous. Auth.*, 165 F. Supp. 3d 51, 76 (S.D.N.Y. 2016) (citation and internal quotation marks omitted). "Merely providing notice of the occurrence is not adequate to constitute notice of a particular claim." *Id.*

Here, as Defendants note, Plaintiff's notice of claim fails to specifically name any of the Individual Defendants. (Dkt. No. 10-3, at 2). Contrary to Defendants' assertion that "the Northern District Court's most recent . . . ruling . . . makes it abundantly clear that individual police officer defendants *must be named* in the underlying notice of claim,"[13] (Dkt. No. 15, at 5), "[t]he Departments of the New York Appellate Division are currently split on the issue of whether or not an individual must be specifically named in a plaintiff's notice of claim before being sued as an individual defendant in a subsequent civil action." *Alexander v. City of Syracuse*, No. 17-cv-1195, 2018 WL 6591426, at *4 n.4, 2018 U.S. Dist. LEXIS 210687, at *11 n.4 (N.D.N.Y. Dec. 13, 2018); *compare Goodwin v. Pretorious*, 105 A.D.3d 207, 215–16 (App.

---

[13]. The opinion Defendants cite, *Tuff v. Vill. of Yorkville Police Dep't*, 2017 WL 401241, 2017 U.S. Dist. LEXIS 12142 (N.D.N.Y. Jan. 30, 2017), is not the most recent occasion this Court has visited the issue. *See Alexander v. City of Syracuse*, No. 17-cv-1195, 2018 WL 6591426, 2018 U.S. Dist. LEXIS 210687 (N.D.N.Y. Dec. 13, 2018). In any event, the court concluded in *Tuff* that dismissal was warranted due to the plaintiff's failure to: (i) identify the correct date of the incident in question; or (ii) "provide sufficient factual predicates" to relate plaintiff's traffic stop with his claims of negligence. *See Tuff*, 2017 WL 401241, at *12–13, 2017 U.S. Dist. LEXIS 12142, at *31. The court had no reason to address the split within New York's Appellate Division.

Div. 4th Dep't 2013) ("If the legislature had intended that there be a requirement that the individual employees be named in the notices of claim, it could easily have created such a requirement."), *with Cleghorne v. City of N.Y.*, 99 A.D.3d 443, 446 (App. Div. 1st Dep't 2012) ("[T]he action cannot proceed against the individual defendants because they were not named in the notice of claim."). "Because the New York Court of Appeals is likely to adopt . . . the more lenient rule," *Alexander*, 2018 WL 6591426, at *4 n.4, 2018 U.S. Dist. LEXIS 210687, at *11 n.4, several district courts in the Second Circuit, including this district, have "adopt[ed] the *Goodwin* Court's well-reasoned conclusion that there is no requirement that individual defendants be specifically named in the Notice of Claim," *Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 397 (S.D.N.Y. Dec. 10, 2013).

Accordingly, the Court declines to dismiss Plaintiff's state law claims against the Individual Defendants due to his failure to identify them in his notice of claim.

### 3. Intentional Infliction of Emotional Distress

Plaintiff's intentional infliction of emotion distress claim may go forward against the Individual Defendants. As noted above, the "notice-of-claim provision of New York law is intended to enable a prompt investigation and presentation of evidence of the facts and circumstances out of which claims arise." *Gonzalez v. Bratton*, 147 F. Supp. 2d 180, 193 (S.D.N.Y. 2001) (quoting *Ismail v. Cohen*, 706 F. Supp. 243, 250 (S.D.N.Y.1989)). "The fact that a cause of action not mentioned in the notice of claim arises out of the same incident as enumerated claims is not pivotal; rather, the nature of the claim and the theory of liability are determinative." *Nieblas–Love*, 165 F. Supp. 3d at 76 (citation and internal quotation marks omitted). "Thus, not every claim need be set forth *in haec verba*, as long as the details pertaining to such a claim are described sufficiently with respect to time, place and manner to enable the city to investigate the claims. *Gonzalez*, 147 F. Supp. 2d at 193. As described above, under New York law, "a plaintiff claiming intentional infliction of emotional distress must show: (1) extreme and outrageous conduct, measured by the reasonable bounds of decency tolerated by society; (2) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." *Weaver v. City of New York*, No. 13-cv-20, 2014 WL 950041, at *8, 2014 U.S. Dist. LEXIS 32036, at *24 (E.D.N.Y. Mar. 11, 2014).

Here, the notice of claim alleges that Plaintiff suffered "physical pain and suffering, psychological and physical distress, fear and other trauma," (*id.* at 3), resulting from the incident during which:

> [P]olice officers of the Schenectady Police Department (SPD) utilized excessive and unnecessary force in arresting claimant, including shooting claimant with firearms. Following the claimant being shot by SPD officers, the officers denied claimant access to medical treatment for over two hours by failing to timely summon

> emergency medical services (EMS) . . . [and] by denying EMS workers access to claimant [and] by denying claimant's friends/family access to him for the purpose of assisting him to obtain medical treatment. By extensively delaying claimant's access to medical treatment for hours after shooting him the SPD officers were negligent and/or deliberately indifferent to claimant's serious medical needs.

(Dkt. No. 10-3, at 2). Given the thorough description of the incident and the nature of the claim, the Court concludes that the notice of claim is sufficient to "adequately notify the municipal defendants that [Plaintiff] might bring an IIED claim against them." *Rentas v. Ruffin*, 816 F.3d 214, 227 (2d Cir. 2016); *see also Rissetto*, 2016 WL 4530473, at *39 n.112, 2016 U.S. Dist. LEXIS 115832, at *148–49 n.112 (notice of claim sufficient to withstand dismissal of claim for IIED where plaintiff "made reference to . . . 'mental anguish,' . . . 'emotional injury' and 'related medical expenses'"); *Burbar v. Inc. Vill. of Garden City*, 961 F. Supp. 2d 462, 468 (E.D.N.Y. 2013) (denying motion to dismiss intentional infliction of emotional distress claim where "all claims in the Notice of Claim arose from the same underlying arrest"); *cf. Alexander*, 2018 WL 6591426, at *5, 2018 U.S. Dist. LEXIS 210687, at *11 (holding that notice of claim asserting unlawful search, arrest, and impoundment of vehicle insufficient to sustain subsequent claims for defamation and IIED).

Accordingly, Plaintiff's failure to expressly assert a claim for intentional infliction of emotional distress in his notice of claim does not warrant dismissal of that claim here.

### 4.    Section 50-h Examination

Under section 50-h of the New York's General Municipal Law, "[a]fter receiving a Notice of Claim, the municipality may demand a hearing to examine the claimant relative to the occurrence and extent of the injuries or damages for which claim is made." *Frantz*, 2017 WL 4737258, at \*4, 2017 U.S. Dist. LEXIS 173413, at \*10–11 (internal quotation marks omitted). "Where a demand for examination has been served as provided in [§ 50-h(2)] no action shall be commenced against the city . . . against which the claim is made unless the claimant has duly complied with such demand for examination." N.Y. Gen. Mun. Law § 50-h(5). Where, however, a plaintiff appears for an examination and invokes his or her Fifth Amendment privilege against self-incrimination at a section 50-h hearing, "the plaintiff, not . . . defendants, [is] obligated to reschedule a continuation of the 50-h hearing after the criminal proceeding [has been] terminated." *Kemp v. Cty. of Suffolk*, 61 A.D.3d 937, 938 (App. Div. 2d Dep't 2009).

Here, Defendants' served their demand for a section 50-h examination on October 24, 2017. (Dkt. No. 14-3, at 1). On November 15, 2017, citing the likelihood that Plaintiff would invoke the Fifth Amendment due to the criminal charges pending against him, Plaintiff requested an "an adjournment of the hearing until the criminal case has resolved." (Dkt. No. 14-4, at 1). Defendants declined Plaintiff's request for an adjournment, and indicated that they "plan[ned] to go forward with [the] 50-h examination as noticed for December 5, 2017." (Dkt. No. 14-5, at 1). Defendants subsequently granted a short adjournment, to January 4, 2018, to accommodate the schedule of Plaintiff's counsel. (Dkt. No. 14-1, at 3). Plaintiff appeared for and participated in the examination, but, on the advice of his criminal counsel, refused to answer any questions related to the events of June 5, 2017 that gave rise to his claim. (*See* Dkt. No. 10-5, at 4–5; Dkt. No. 14-7). At the conclusion of the examination and afterwards, neither party indicated their willingness for a continuation of the section 50-h examination once the criminal proceedings

against Plaintiff had concluded. (Dkt. No. 14-7, at 10; Dkt. No. 14-8, at 1). Before commencing the instant proceedings, Plaintiff failed to notify Defendants of the disposition of the criminal charges or request a continuation of the section 50-h examination.

Because Plaintiff appeared at the examination and "invoked his Fifth Amendment privilege against self-incrimination" "while the criminal charges against [him] were pending," to maintain his claims against the municipality, he was obligated to "inform[] the . . . [D]efendants of the disposition of the criminal case against him[] and request[] that the 50-h hearing be rescheduled." *Gold v. Rockville Ctr. Police Dept.*, 71 A.D.3d 632, 634 (App. Div. 2d Dep't 2010); *see also Przybyla v. County of Suffolk*, 2017 WL 1274051, at *2, 2017 U.S. Dist. LEXIS 30842, at *7 (concluding that plaintiff's failure to take "the affirmative step required by New York State to reschedule the 50-h hearing" after invoking Fifth Amendment while criminal proceedings were pending against her warranted dismissal of her claims); *cf. Coleman v. City of Niagara Falls*, No. 09-cv-157S, 2010 WL 2869529, at *3, 2010 U.S. Dist. LEXIS 73089, at *12–13 (W.D.N.Y. July 20, 2010) (declining to find that plaintiff "willfully refuse[d] to comply with the requirement to appear at a 50-h hearing prior to commencement" where, after invoking the Fifth Amendment, plaintiff "in fact attempted to reschedule the § 50-h hearing after the conclusion of the criminal proceedings"). Notwithstanding Defendants' refusal to postpone Plaintiff's section 50-h examination, Plaintiff was not alleviated of his "burden . . . to resolve any discrepancies regarding the rescheduling of a 50-h Hearing in accordance with the Second Circuit's directive to construe Notice of Claim requirements 'strictly.'" *Przybyla*, 2017 WL 1274051, at *3, 2017 U.S. Dist. LEXIS 30842, at *6. Accordingly, the Court grants Defendants'

motion for summary judgment on Plaintiff's state law claims against the City of Schenectady for his failure to comply with General Municipal Law § 50-h.[14]

With regard to his state law claims against the Individual Defendants, Plaintiff argues that they are "not subject to dismissal as General Municipal Law § 50-h does not apply to officers sued in their individual capacity." (Dkt. No. 14, at 21). As Plaintiff points out, at least one court in this circuit has concluded that, where a "claim is raised solely against the Defendants in their individual capacities," General Municipal Law "§ 50-h does not bar these claims after Plaintiff's failure to" comply with a municipality's demand for an examination. *Bradley v. Golphin*, No. 14-cv-4289, 2018 WL 480754, at *4, 2018 U.S. Dist. LEXIS 8245, at *11 (E.D.N.Y. Jan. 18, 2018). Defendants have not responded to this argument. The Court need not reach the issue with respect to the intentional tort claim, however, because "service of a notice of claim is not a condition precedent to the commencement of an action against a [municipality's] employees or agents unless the [municipality] is required to indemnify the individual defendants." *Costabile v. Cty. of Westchester*, 485 F. Supp. 2d 424, 432 (S.D.N.Y. 2007). "Where the employees were acting within the scope of their employment in committing the alleged tortious acts, the county is obligated to indemnify them." *Seale v. Madison Cty.*, 929 F. Supp. 2d 51, 72 (N.D.N.Y. 2013). Accordingly, where a plaintiff alleges that "defendant [municipal] employees were acting outside the scope of their employment, *i.e.*, by the commission of intentional torts, the filing of a notice of claim is unnecessary." *Id.*

---

[14] The Court notes that "New York State's notice-of-claim statutes, including . . . § 50-h, appears to apply to [a plaintiff's] state constitutional claim[s]." *G.D.S. ex rel. Slade v. Northport-E. Northport Union Free Sch. Dist.*, 915 F. Supp. 2d 268, 280 (E.D.N.Y. 2012); *see also D.H. v. City of New York*, 309 F. Supp. 3d 52, 81 (S.D.N.Y. 2018) ("With regards to constitutional tort claims asserted against the City . . . the notice-of-claim requirement would apply absent an applicable exception."); *Pflaum v. Town of Stuyvesant*, 937 F. Supp. 2d 289, 308 (N.D.N.Y. 2013); *Felmine v. City of New York*, No. 09-cv-3768, 2012 WL 1999863, at *7, 2012 U.S. Dist. LEXIS 77299, at *22–23 (E.D.N.Y. June 4, 2012). Accordingly, all of Plaintiff's New York State Constitutional claims against the City of Schenectady are subject to dismissal on this ground. *See supra* Section III.A.3.b.

Here, Plaintiff's state law claim of intentional infliction of emotional distress is based on intentional conduct that would be well beyond the scope of their employment. *See, e.g.*, *Tulino v. City of New York*, No. 15-cv-7106, 2016 WL 2967847, at \*3, 2016 U.S. Dist. LEXIS 66012, at \*10 (S.D.N.Y. May 19, 2016) (denying motion to dismiss tort claim where the plaintiff's claims were "for intentional torts based on acts committed outside the scope of employment," and noting that the plaintiff's claims "for assault, battery, and defamation are premised on alleged conduct that would almost certainly be 'in violation of . . . rule[s] or regulation[s]' and beyond the scope of the individual Defendants' employment" (alterations in original) ); *Vesterhalt v. City of New York*, 667 F.Supp.2d 292, 301 (S.D.N.Y. 2009) ("Because trespass and false arrest are intentional torts under New York law, plaintiff's claims, by definition, constitute 'intentional wrongdoing' that does not qualify for indemnification. Therefore, plaintiff's trespass and false arrest claims are not procedurally barred by her failure to file a Notice of Claim." (citations omitted)); *Kavazanjian v. Rice*, No. 03-cv-1923, 2008 WL 5340988, at \*6, 2008 U.S. Dist. LEXIS 103881, at \*20–21 (E.D.N.Y. Dec. 22, 2008) (finding that the plaintiff's state law claims were "not procedurally barred by his failure to file a Notice of Claim" because "the alleged conduct—assault and battery and intentional infliction of emotional distress—would, by definition, have constituted 'intentional wrongdoing'"). "Thus, failure to comply with New York's notice of claim requirements under section 50-h poses no bar to Plaintiff's intentional tort claims against the individual [municipal] Defendants." *Wolongevicz v. Town of Manlius*, No. 17-cv-933, 2018 WL 3769857, at \*13, 2018 U.S. Dist. LEXIS 130274, at \*41 (N.D.N.Y. Aug. 8, 2018).[15]

---

[15] Because Defendants have not addressed Plaintiff's argument regarding the application of 50-h with respect to Plaintiff's claim for negligence against the Individual Defendants, the Court declines to address that issue at this time.

**IV. CONCLUSION**

For these reasons, it is hereby

**ORDERED** that Defendants' motion for judgment on the pleadings and for summary judgment (Dkt. No. 10) is **GRANTED** in part and **DENIED** in part; and it is further

**ORDERED** that Plaintiff's *Monell* claim against Defendant City of Schenectady is **DISMISSED without prejudice**; and it is further

**ORDERED** that Plaintiffs' Eighth Amendment claim against all Defendants is **DISMISSED with prejudice**; and it is further

**ORDERED** that Plaintiff's state law claims for negligence, intentional infliction of emotional distress, respondeat superior, and violations of the New York State Constitution against Defendant City of Schenectady are **DISMISSED with prejudice**; and it is further

**ORDERED** that Plaintiff's state law claims for violations of the New York State Constitution against the Individual Defendants are **DISMISSED with prejudice**; and it is further

**ORDERED** that Defendants' motion (Dkt. No. 10) is otherwise **DENIED** in its entirety, and it is further

**ORDERED** that, in accord with this Decision, the following claims survive: (i) Plaintiff's claims under 42 U.S.C. § 1983 against the Individual Defendants for violations of the Fourth Amendment; (ii) Plaintiff's claims under 42 U.S.C. § 1983 against the Individual Defendants based on deliberate indifference to serious medical needs in violation of the Fourteenth Amendment; (iii) Plaintiff's negligence claim against the Individual Defendants; and (iv) Plaintiff's intentional infliction of emotional distress claim against the Individual Defendants.

**IT IS SO ORDERED.**

_Brenda K. Sannes_
Brenda K. Sannes
U.S. District Judge

Dated: August 13, 2019
       Syracuse, New York